176 N.J. Super. 642 (1980)
424 A.2d 481
GILBERT A. GEHIN-SCOTT, PLAINTIFF,
v.
WILLINGBORO TOWNSHIP, DEFENDANT.
Superior Court of New Jersey, Tax Court of New Jersey.
September 30, 1980.
*644 Carl Schulze for plaintiff (Schulze & Wood, attorneys).
Henry G. Tutek for defendant (Kessler, Tutek & Gottlieb, attorneys).
LARIO, J.T.C.
Taxpayer appeals from a 1976 assessment of land-$114,200, improvements-$72,000, for a total of $186,200.
The subject property consists of approximately 22 acres of land adjoining the Rancocas Creek together with a dwelling, originally constructed about 1700, and outbuildings located thereon.
Plaintiff testified as follows:
He entered into an agreement of sale for the purchase of this property on February 23, 1976. Prior to the execution thereof, he and the real estate broker involved contacted the tax assessor's *645 office and made inquiries concerning the assessment. They were advised that the assessment was $95,700 and that if a property were to sell for approximately double its assessment, the sale of that property would not be used as a guide to future assessments on that property but instead the basis would be the average sales price of that type house. Based upon his inquiries he assumed that even if he purchased the property for double its assessed value, it would have been assessed for 1976 at $100,000.
The original asking price to plaintiff for this property was $281,000 and after negotiations, a price of $200,000 was finally agreed upon. Prior to his executing the agreement he had his attorney contact the assessor to ascertain if the property could qualify for a farmland assessment. He was advised that it would not for 1976 but although there normally was a two-year waiting period, they could "negotiate" for 1977. Predicated upon his getting a farmland assessment for 1977, he executed this agreement of sale. Title was transferred on June 1, 1976. Shortly thereafter he received the second-half bill whereby the taxes were practically doubled by reason of the increased assessment.
The tax history of the subject property is as follows:

 1973 1974 1975
 Land: $71,400 71,400 71,400
 Improvements: $21,400 21,700 24,300
 ______ ______ ______
 Total: $92,800 94,100 95,700

Plaintiff placed in evidence a letter dated February 23, 1976 from the tax assessor to the Burlington County Board of Taxation informing them that defendant had found two errors in the 1976 Tax Book of which one covered the subject property and increased the land assessment by $39,200 and the improvements by $47,000 resulting in the final assessment appealed from.
Plaintiff asserts since he was advised prior to his executing the agreement of sale that the assessment was $95,700, the *646 municipality should be bound by this figure. He further urges it was not until after the assessor received knowledge of the agreement of sale did he decide to increase the assessment. Since this knowledge was not acquired until several months after October 1, 1975, plaintiff argues that the assessor should not have been permitted to change the assessment.
The assessor testified that the market conditions in Willingboro are constantly changing, therefore, each year he does his best to ascertain the fair market value of each property. The subject property is one of only three properties in the township which could qualify for a farmland assessment. In the summer of 1975 he contacted all three owners, including the then owner of the subject property one Joseph McCrane, to ascertain if the owners were going to apply for a farmland assessment. Mr. McCrane's property had previously enjoyed a farmland assessment, however, when he was appointed as a State of New Jersey official, by reason thereof, he did not renew his application. He advised the assessor for this same reason he did not choose to file for the tax year 1976.
At the time the assessor stated he was aware that the property had been previously listed for sale for over $300,000 and that it was presently listed for $280,000. He discussed with the owner his listing price of $280,000 and Mr. McCrane advised him he would sell the property for substantially less than the listing price if he could get a quick sale.
The assessor had the township engineer do a study in early 1975 of properties along the Rancocas Creek to ascertain their respective riparian rights. In connection therewith, the assessor made an appraisal of the subject property which he did by the reproduction method applying the New Jersey Assessor's Manual. He arrived at a valuation substantially higher than what he considered to be the fair market value, therefore, he did not give this method too much weight since it came to over $225,000 for the main house plus another $30,000 to $40,000 for the outbuildings. He then relied upon the market value in arriving at his final conclusion of value.
*647 There are approximately 11,000 line items in the tax book all of which are computerized. Each year the assessor sends the assessment information to Infocomp of Cherry Hill, a computer company, who computerize the individual assessments on magnetic tapes. They are then transmitted to the County Board of Taxation by way of the Burlington County College where the tax books are printed by its data-processing service.
The assessor's assistant testified that all the 1976 tax assessment information including the change forms were submitted to Infocomp by December 23, 1975. She further stated that change forms covering the subject property and one other property were not punched exactly as originally listed. They corrected these two errors by the aforesaid letter of February 23, 1976 to the county board.
Plaintiff's first legal contention is basically a claim of estoppel against defendant. Doctrines of estoppel are not applied against the state and its counties and municipal corporations to the same extent as they are against individuals and private corporations. City of Bayonne v. Murphy & Perrette Co., 7 N.J. 298 (1951).
"In any event, the application of principles of estoppel is particularly inappropriate where the collection of taxes by a public body is involved, except in unusual circumstances." N.J. Tpke. Auth. v. Tp. of Washington, 137 N.J. Super. 543, 552 (App.Div. 1975); affirmed 73 N.J. 180. For a finding of an existence of unusual circumstances to justify the exception, it must be proved that the interests of justice and fairness dictate such a course. State v. East Shores, Inc., 154 N.J. Super. 57 (Ch.Div. 1977). No such finding can be supported by the facts in the instant case.
All real property must be assessed pursuant to N.J.S.A. 54:4-23 which provides that the assessor shall
... determine the full and fair value of each parcel of real property ... at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 ...
*648 Any alleged agreement, stipulation, representation or expression of policy which contravenes the directions of N.J.S.A. 54:4-23, supra is illegal and unenforceable. An assessor's statutory duty to assess local real property at true value is mandatory and specific, and not discretionary. Switz v. Middletown Tp., 40 N.J. Super. 217, 230 (App.Div. 1956), modified in other respects 23 N.J. 580 "True value cannot be established for tax purposes upon an assumption that a prior assessment, unappealed from is correct." Appeal of Mutual Benefit Life Ins. Co., 35 N.J. Super. 113 (App.Div. 1955). The true test of whether an assessment for a prior year is a proper assessment for a current year is whether the prior assessment represents true value for the assessment year under appeal. Appeal of Kresge-Newark, Inc., 30 N.J. Super. 489 (App.Div. 1954).
Even had the assessment been levied in accordance with plaintiff's assumption, it is to be noted that under N.J.S.A. 54:3-21 either another taxpayer or the defendant municipality could have appealed the assessment to the County Board as being too low. Switz v. Middletown Tp., supra. At the trial before the County Board or subsequently on appeal to this court, it could not be successfully urged in defense of the third party's complaint to increase the assessment that the amount appealed from was agreed to between the property owner and the assessor. The sole issues would be the true value of the subject property as of the assessing date and whether the original assessment levied discriminated against the municipality or the other taxpayers. Bostian v. Franklin State Bank, 167 N.J. Super. 564 (App.Div. 1979).
As to the second issue raised by plaintiff there is nothing in the record to substantiate plaintiff's assumption that the assessor in establishing the assessment on the subject property for 1976 relied upon the subject sale which occurred subsequent to the assessing date. The assessor testified that he made independent reproduction and market value appraisals of the *649 subject property in the summer of 1975.[1] This testimony was uncontradicted.
Nevertheless, even had the plaintiff proved that the assessor had relied upon the subsequent sale of the subject property and thereafter changed his original assessment, the ultimate issue on this appeal is the true value of the property as of October 1, 1975. Rek Investment Co. v. Newark, 80 N.J. Super. 552 (App. Div. 1963). The burden of proof to establish this true value is upon the plaintiff. A presumption exists in favor of the correctness of the original assessment. Riverview Gardens v. North Arlington, 9 N.J. 167 (1952). To overcome this presumption the evidence must be definite, positive and certain in quality and quantity. Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99 (1952).
In the instant case, plaintiff did not introduce any evidence whatsoever relating to the true value of the property as of October 1, 1975. Even if the subsequent sale of the subject property to plaintiff were to be disregarded, there exists no evidence before the court to make a finding of true value below the assessment under appeal.
Plaintiff has failed to carry his burden of proof that the assessment is incorrect. Judgment will be entered dismissing plaintiff's appeal.
NOTES
[1] Neither constitutional nor statutory discrimination is involved.